**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael VELASQUEZ, Defendant-
Appellant.**

**No. 72-1157.**

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1972.

David Berman (argued), San Diego, Cal., for defendant-appellant.

Douglas G. Hendricks, Asst. U. S. Atty. (argued), Stephen G. Nelson, Asst. U. S. Atty., Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before MERRILL and ELY, Circuit Judges, and LUCAS,* District Judge. .

LUCAS, District Judge:

Appellant was convicted pursuant to 21 U.S.C. §§ 952, 960 and 963 for the importation into the United States of a controlled substance, approximately five grams of heroin. He raises three issues in this appeal.

Appellant contends that the heroin should not have been admitted into evidence, because a warrantless search at the border of the United States and Mexico resulted in finding a rubber contraceptive containing heroin in appellant's rectum. Appellant contends the search and seizure was unreasonable because at the time of the search there was no clear indication that contraband was hidden in the body cavity.

We believe the customs agents at the border had sufficient suspicion of appellant to conduct a strip search of him. They testified appellant appeared nervous and glassy-eyed; the pupils of his eyes were pinpointed; he had a semi-drowsy appearance; there were needle marks on both of his arms, one mark appearing to be fresh; and he did

* Honorable Malcolm M. Lucas, United States District Judge, Central District of California, sitting by designation.

not seem to be under the influence of alcohol, as there was no alcoholic odor on his breath. Based on the foregoing facts, the customs agent determined appellant was under the influence of a narcotic. In searching appellant's wallet, a copy of a criminal complaint was discovered which indicated three months earlier appellant had been arrested for possession of heroin in Los Angeles.

At the strip search of appellant, the agents saw a greasy substance in his rectal area. We conclude the above facts constituted for the customs agent a clear indication necessary for him to have a physician conduct a rectal probe of appellant. United States v. Summerfield, 421 F.2d 684, 685 (9th Cir. 1970).

Appellant relies on Huguez v. United States, 406 F.2d 366 (9th Cir. 1968) and contends the body cavity search was unreasonable because there is no evidence the examining physician knew any of the facts which would have clearly indicated appellant was smuggling narcotics before the examination. The Court in *Huguez* did not hold that it is necessary for the physician to be aware of any of the facts upon which the customs officers base their conclusion that the suspect is secreting narcotics in his body. In *Huguez*, the examining physician conducted a rectal probe without a request to do so by the customs agent; and neither the physician nor the customs agents, who assisted in the rectal probe by physically forcing Huguez to submit, had real suspicion Huguez was concealing narcotics. *Huguez, supra*, at 378–379.

In the present case, the customs officer who requested the physician to conduct the rectal search had a clear indication the contraband was concealed in the body cavity. We believe this knowledge on the part of the customs agent was sufficient to justify the rectal search by the physician. We reiterate, there is no requirement that the examining physician be apprised of these facts.

■ The exclusionary rule is directed at lawless police activity, Linkletter v. Walker, 381 U.S. 618, 636–637, 85 S.Ct. 1731, 14 L.Ed.2d 601, and we cannot say this purpose would be advanced by requiring the physician to share the customs agent's knowledge of all the facts justifying the search. *Cf. Linkletter, supra*, at 637, 85 S.Ct. 1731 (1965). The courts wish to insure that the conduct of the customs officials conforms to constitutional standards by denying to them the use of unconstitutionally obtained evidence. It is hardly conceivable that the physician is either aware of or concerned with the question of whether the evidence is legally admissible; therefore, we cannot say the exclusionary rule would have any effect on his behavior. We can see no purpose in requiring the customs agents to recite to the examining physician any of the facts which they have concerning appellant's possession of narcotics. Since a physician is required to have no knowledge of the law of search and seizure to practice his profession, any such enumeration of the facts by the agents to the doctor would be a meaningless ritual, and would be comparable to requiring the police to recite to a locksmith the basis for their probable cause before he could legally open a lock for them. We cannot see how such a recitation would serve to strengthen the guarantees of the Fourth Amendment.

Appellant contends that *Huguez, supra*, requires the search to be conducted in a medically approved manner, and maintains there is no evidence the search in the present case was properly conducted. In *Huguez*, "[T]he 'medical examination' degenerated into a 'force process' . . . which cannot be . . . upheld as a constitutional border search." *Huguez, supra*, at 379. In the absence of contrary evidence, this Court will presume the examining physician performed his duties conscientiously. *Cf.* Willapoint Oysters, Inc. v. Ewing, 174 F.2d 676, 696 (9th Cir. 1949).

The decision of the trial court is affirmed.