### Gloria BUSTILLOS, Plaintiff,

### v.

### EL PASO COUNTY HOSPITAL DISTRICT, University Medical Center, Frank Mendez, Lynette Telles, Dr. Daniel Solomin, Dr. Michael Parsa, Dr. Jorge Aguila, Dr. Shaked Laks, Medical Student Raizada, and Four Unknown Federal AgentS, Defendants.

### EP–15–CV–311–PRM

United States District Court, W.D. Texas, El Paso Division.

Signed June 6, 2016

Ruben Perez Hernandez, Law Office of Ruben P. Hernandez, Hadley A. Huchton, Walter L. Boyaki, Boyaki Law Firm, El Paso, TX, for Plaintiff.

John L. Ross, Chantel Loren Lee, Thompson, Coe, Cousins & Irons, LLP, Jason T. Weber, Gruber Elrod Johansen Hail Shank, Dallas, TX, Richard Andrew Bonner, Kemp Smith LLP, Javier Saenz, Manuel Romero, El Paso, TX, Eric A. Hudson, Office of the Attorney General of Texas, Austin, TX, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING AS MOOT DEFENDANTS' MOTIONS FOR PROTECTION

PHILLIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered the following:

**Motion to Dismiss**

- Defendant Dr. Shaked Laks's "Amended Motion to Dismiss" (ECF No. 37), filed on February 9, 2016;

 ∘ Plaintiff Gloria Bustillos's "Response in Opposition to Defendant Dr. Shaked Laks' [sic] Amended Motion to Dismiss" (ECF No. 50), filed on February 22, 2016;

- Defendant Dr. Michael Parsa's "Amended Motion to Dismiss" (ECF No. 38), filed on February 9, 2016;

 ∘ Plaintiff's "Response in Opposition to Defendant Dr. Michael Parsa's Amended Motion to Dismiss" (ECF No. 49), filed on February 22, 2016;

 ∘ Plaintiff's "Supplemental Response in Opposition to Defendant Dr. Michael Parsa's Amended Motion to Dismiss" (ECF No. 91), filed on April 19, 2016;

- Defendant Dr. Daniel Solomin's "Motion to Dismiss" (ECF No. 76), filed on March 17, 2016;
 ° Plaintiff's "Response in Opposition to Defendant Dr. Daniel Solomin's Motion to Dismiss" (ECF No. 90), filed on April 19, 2016;
- Defendant Dr. Jorge Aguila's "Motion to Dismiss" (ECF No. 77), filed on March 17, 2016;
 ° Plaintiff's "Response in Opposition to Defendant Dr. Jorge Aguila's Motion to Dismiss" (ECF No. 92), filed on April 19, 2016;
- Defendants Solomin, Parsa, Aguila, and Laks's "Joint Reply in Support of Motions to Dismiss [ECF No. 37, 38, 76, & 77]" (ECF No. 101), filed on April 29, 2016 (alterations in original);
- Defendant Frank Mendez's "Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 81), filed on March 21, 2016;
 ° Plaintiff's "Response in Opposition to Defendant Frank Mendez' [sic] Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 96), filed on April 19, 2016;
- Defendant Lynette Telles's "Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 82), filed on March 21, 2016;
 ° Plaintiff's "Response in Opposition to Defendant Lynette Telles' [sic] Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 95), filed on April 19, 2016;
- Defendants Mendez and Telles's "Reply . . . to Plaintiff's Responses (Docket Nos. 95 and 96) to Defendants' Motions to Dismiss (Docket Nos. 81 and 82)" (ECF No. 98), filed on April 26, 2016;

**Motions for Protective Order**

- Defendant Laks's "Opposed Motion for Protection" (ECF No. 42), filed on February 10, 2016;
 ° Plaintiff's "Response to Defendant Laks' [sic] Opposed Motion for Protection" (ECF No. 52), filed on February 22, 2016;
- Defendant Parsa's "Opposed Motion for Protection" (ECF No. 43), filed on February 10, 2016;
 ° Plaintiff's "Response to Defendant Parsa's Opposed Motion for Protection" (ECF No. 51), filed on February 22, 2016;
- Defendant Solomin's "Opposed Motion for Protection" (ECF No. 79), filed on March 17, 2016;
 ° Plaintiff's "Response to Defendant Solomin's Opposed Motion for Protection" (ECF No. 93), filed on April 19, 2016;
- Defendant Aguila's "Opposed Motion for Protection" (ECF No. 80), filed on March 17, 2016;
 ° Plaintiff's "Response to Defendant Aguila's Opposed Motion for Protection" (ECF No. 94), filed on April 19, 2016;

in the above-captioned cause. For the reasons discussed below, the Court will grant all the outstanding motions to dismiss and deny as moot the motions for protection.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of an inspection at the United States–Mexico border. On September 19, 2013, Plaintiff was crossing from Mexico into the United States at the Paso del Norte International Bridge in El Paso, Texas. Pl's First Am. Compl. for Violations of Civil Rights Pursuant to 42 U.S.C. § 1983 [sic], Punitive Damages, Att'y Fees Pursuant to 42 U.S.C. § 1988 [sic], and Bivens Claims 2, Feb. 8, 2016, ECF No. 36 [hereinafter "Complaint"].

Plaintiff alleges that four U.S. Customs and Border Protection and U.S. Immigration Customs Enforcement agents ("Federal Agents") inspected Plaintiff because they suspected that she was smuggling drugs. *Id.* Failing to discover drugs, the Federal Agents handcuffed and transported Plaintiff to the Defendant Hospital.[1] *Id.* Once there, Plaintiff claims that Defendant Hospital and former defendant Texas Tech University Health Sciences Center–El Paso ("Former Defendant Texas Tech") and their agents performed x-ray, pelvic, and rectal examinations. *Id.* After concluding that Plaintiff was not carrying drugs, "Plaintiff was returned to the bridge and released." *Id.*

In late September 2015, Plaintiff filed the instant action in Texas state court. *See id.* A month later, Defendant Hospital removed the instant action to federal court. Notice of Removal, Oct. 23, 2015, ECF No. 1.[2]

Plaintiff's lawsuit asserts (1) 42 U.S.C. § 1983 claims for violations of her Fourth, Fifth, and Fourteenth Amendment rights, and (2) intentional tort claims.[3] Specifically, Plaintiff makes the following factual allegations against each Defendant:

- Defendant Parsa ("Dr. Parsa")
 - Ordered a series of x-ray examinations of Plaintiff, Compl. 8;
 - Conducted a pelvic examination of Plaintiff, *id.;*
 - Subjugated Plaintiff to a rectal examination, *id.* at 16;

- Defendant Solomin ("Dr. Solomin")
 - Ordered a series of x-ray examinations of Plaintiff, *id.* at 8;
 - Conducted a pelvic examination of Plaintiff, *id.;*
 - Performed a rectal examination of Plaintiff, *id.;*

- Defendants Aguila ("Dr. Aguila"), Mendez ("Nurse Mendez"), and Telles ("Nurse Telles")
 - Subjugated Plaintiff to an x-ray examination, *id.* at 16;
 - Subjugated Plaintiff to a pelvic examination, *id.;* and
 - Subjugated Plaintiff to a rectal examination, *id.*[4]

Drs. Laks, Parsa, Solomin, Aguila—doctors for Former Defendant Texas Tech—and Nurses Mendez, and Telles—nurses for Defendant Hospital—now bring their own respective motions to dismiss invoking qualified immunity and asserting that Plaintiff has failed to state a claim. Notably, Drs. Laks, Parsa, Solomin, and Aguila contend that they "reli[ed] upon [Federal] [A]gents seeking [Drs. Laks, Parsa, Solomin, and Aguila's] assistance and [were] under no obligation to inquire into the sufficiency of [the Federal Agents'] suspicion or probable cause before participating in an X-ray request or pelvic examination." *See* Def. Dr. Shaked Laks' [sic] Am. Mot. to Dismiss 13; Def. Dr. Michael Parsa's Am. Mot. to Dismiss 12; Def. Dr. Daniel Solomin's Mot. to Dismiss 12; Def.

---

1. Plaintiff has identified Defendants University Medical Center and El Paso County Hospital District as separate entities. In fact, they are one entity: Defendant El Paso County Hospital District does business as University Medical Center. The Court will refer to this single entity as "Defendant Hospital."

2. Although Plaintiff had not served Defendant Texas Tech at the time of removal, she eventually did so. The Court recently remanded all claims against Defendant Texas Tech to Texas state court. *See* Order Granting in Part and Den. in Part Pl.'s First Am. Mot. to Remand, Apr. 12, 2016, ECF No. 88 ["Remand Order"].

3. Plaintiff does not specify which intentional torts she is asserting in this lawsuit.

4. Plaintiff does not make any specific factual allegations against Dr. Laks. *See infra* Part III.C.1.

Dr. Jorge Aguila's Mot. to Dismiss 12. Similarly, Nurse Mendez argues that he was "entitled to rely upon the [Federal Agents] and physician's determination that the requested procedures were authorized and lawful." *See* Def. Frank Mendez's Mot. to Dismiss, or in the Alternative, for a More Definite Statement 11. Likewise, Nurse Telles contends that she "rel[ied] upon [Federal Agents] and physicians seeking his [sic] assistance [and] was under no obligation to inquire into the sufficiency of the [Federal Agents'] reasonable suspicion." Def. Lynette Telles' [sic] Mot. to Dismiss, or in the Alternative, for a More Definite Statement 9.

## II. LEGAL STANDARD

### A. Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Davila v. United States*, 713 F.3d 248, 255 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal quotation marks omitted). While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks omitted), it must state "more than labels and conclusions": "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Thus, at this stage, the Court must determine whether the well-pleaded facts in Plaintiff's Complaint, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to "move [her] claim 'across the line from conceivable to plausible.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

### B. Section 1983

 To establish a prima facie case under § 1983 for the deprivation of civil rights a Plaintiff must demonstrate: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law. *Doe v. Rains Cty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights created under federal law. *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Plaintiff's lawsuit asserts (1) 42 U.S.C. § 1983 claims for violations of her Fourth, Fifth, and Fourteenth Amendment rights, and (2) intentional tort claims.

Plaintiff's claims can be divided into two major categories: those against (1) State Defendant Doctors—Laks, Parsa, Solomin, Aguila—and (2) El Paso County Defendant Nurses—Mendez and Telles.[5] Accordingly, the Court will address the motions to dismiss for each set of the named Defendants in turn.

---

5. For municipal immunity, the Fifth Circuit has analyzed counties in the same manner as municipalities. *See James v. Harris Cnty.*, 577 F.3d 612, 619–620 (5th Cir. 2009) (holding that a county was not liable when plaintiff failed to satisfy an element of municipal liability). Accordingly, the Court will refer to Defendant Nurses Mendez and Telles as "Municipal Defendants."

## III. DISCUSSION

### A. Intentional Torts

#### 1. State Defendant Drs. Laks, Parsa, Solomin, and Aguila

■ "The Texas Tort Claims Act ["TTCA"] provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code § 101.023). Nevertheless, the TTCA bars a plaintiff's intentional tort claim against an employee when the plaintiff sues both the employee and the governmental unit that employed him or her. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010). "If a suit is filed under [the TTCA] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e). "[I]f a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101,-106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Bustos*, 599 F.3d at 463 (citing *Garcia*, 253 S.W.3d at 655). This holding also applies to intentional torts. *Id.*

Here, Plaintiff elected to sue Former Defendant Texas Tech and its respective employees—Drs. Laks, Parsa, Solomin, and Aguila—for acts arising out of the same actions. *See* Compl. 4–5. Before the Court remanded Plaintiffs claims against Former Defendant Texas Tech to state court, Former Defendant Texas Tech filed a motion asking the Court to dismiss all intentional tort claims against its employees. *See* Def. Tex. Tech Univ. Health Sci. Ctr.'s Mot. to Dismiss 5–6, Mar. 17, 2016, ECF No. 75.

■ The reasoning behind allowing the dismissal of attendant claims is judicious: "[b]y requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs." *Garcia*, 253 S.W.3d at 657.

Accordingly, because Former Defendant Texas Tech moved to dismiss the intentional torts against its employees, Drs. Laks, Parsa, Solomin, and Aguila, the Court will dismiss these state-law-intentional-tort claims against them pursuant to § 101.106(e). *See Bustos*, 599 F.3d at 464.

#### 2. Municipal Defendant Nurses Mendez and Telles

■ "[I]n Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity." *Dall. Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). Defendant Hospital is a political subdivision of the State authorized by the Legislature to "provide for the establishment of a hospital or hospital system to furnish medical aid and hospital care to indigent and needy persons residing in the district." *See* Tex. Health & Safety Code Ann. § 281.002(a). "These districts and their hospitals are 'governmental units' for purposes of the Tort Claims Act." *Klein v. Hernandez*, 315 S.W.3d 1, 7 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code § 101.001(3)). "Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law." *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014).[6]

6. "Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of

"The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts, such as battery." *Gordon*, 434 S.W.3d at 594.

■ Here, Nurses Mendez and Telles are employees for Defendant Hospital. *See* Compl. 3–4. As employees, they are afforded the same protection as their municipal employer. "Texas Tort Claims Act does not waive immunity from suit for intentional torts alleged against a governmental entity *or its employees*" *Davis v. Tex. Dep't of Crim. Justice*, No. 11–13–00363–CV, 2015 WL 6681219, at *2 (Tex. App.–Eastland Oct. 29, 2015, pet. denied) (emphasis added).

Because Plaintiff alleges that Nurses Mendez and Telles committed intentional torts against Plaintiff, her pleadings do not state a claim for which governmental immunity has been waived under the TTCA. Therefore, the Court will dismiss the intentional tort claims against Nurses Mendez and Telles.

### B. Section 1983 Official–Capacity Claims

#### 1. State Defendant Drs. Laks, Parsa, Solomin, and Aguila

■ The Eleventh Amendment codifies the State of Texas's sovereign immunity. *See Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). "Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *Id.* A lawsuit "against a state official in his or

the State, including municipalities and school districts." *Gordon*, 434 S.W.3d at 589 n.1

her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citation omitted). "This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

■ Nevertheless, a plaintiff does some have some recourse. "Pursuant to the *Ex parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity." *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 321 (5th Cir. 2008). Therefore, "prospective injunctive or declaratory relief against a state [official] is permitted . . . but retrospective relief in the form of a money judgment in compensation for past wrongs . . . is barred." *Id.* (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1253 (5th Cir. 1988)) (alterations in original).

Here, Drs. Laks, Parsa, Solomin, and Aguila are all employed by Former Defendant Texas Tech. *See* Compl. 4–5. By illustration, Plaintiff describes Dr. Solomin as a "medical doctor employed by [Former Defendant] Texas Tech . . . . [and who] was a state actor . . . acting within the scope of his employment. . . ." *See id.* Plaintiff uses identical language for Drs. Laks, Parsa, and Aguila—the other employees of Former Defendant Texas Tech. *See id.*

The Fifth Circuit has recognized that Defendant Texas Tech may invoke and seek the protection afforded by the Eleventh Amendment immunity. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 289 n.14 (5th Cir. 1999) ("The Eleventh

(quoting *Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008)).

Amendment cloaks Texas Tech University and Texas Tech University Health Sciences Center with sovereign immunity as state institutions."). Indeed, the Court remanded all claims against Former Defendant Texas Tech after it properly invoked its Eleventh Amendment immunity. *See* Remand Order 12.

Therefore, Plaintiff can only seek prospective relief against Drs. Laks, Parsa, Solomin, and Aguila in their official capacity. *See Nelson*, 535 F.3d at 321. In her Complaint, Plaintiff has asked for an injunction against Former Defendant Texas Tech and Defendant Hospital. *See* Compl. 22. In contrast, Plaintiff only seeks monetary damages and attorneys' fees against the individually named Defendants. *See id.* Because Plaintiff has only sought "retrospective relief in the form of a money judgment in compensation for past wrongs," the Court will dismiss all of Plaintiff's official-capacity claims against Drs. Laks, Parsa, Solomin, and Aguila. *See Nelson*, 535 F.3d at 321.

### 2. Municipal Defendant Nurses Mendez and Telles

 A plaintiff can bring § 1983 suits against municipalities and municipal officials in their official capacity. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity. *Id.* Thus, when a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official capacity claim as "redundant" to the municipal-entity claim. *Sanders–Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) (noting that plaintiff's § 1983 claims against a governmental entity "render[ed] any official

capacity claim against [an employee of that entity] redundant").

Here, Plaintiff's Complaint, specifically Counts Seven and Eight, alleges that Defendant Hospital violated her Fourth and Fifth Amendment rights. *See* Compl. 19–21. These claims are identical to the ones Plaintiff asserts against Nurses Mendez and Telles in Counts Seven, Eight, and Nine.[7]

Because Plaintiff has asserted claims against Defendant Hospital, the municipal entity, and Nurses Mendez and Telles, municipal officials in their official capacity, the Court will dismiss the official capacity claims as "redundant" to the municipal-entity claims. *See Sanders–Burns*, 594 F.3d at 373.

### C. Section 1983 Personal–Capacity Claims Against State Defendant Drs. Laks, Parsa, Solomin, Aguila and Municipal Defendant Nurses Mendez, and Telles

 Qualified immunity applies with equal force to state and municipal officials. *See Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015) (noting that defendants employed by a state can invoke qualified immunity); *Kinney v. Weaver*, 367 F.3d 337, 395 (5th Cir. 2004) (recognizing that defendants employed by a municipality can invoke qualified immunity). Qualified immunity shields state and municipal officials from money damages unless a plaintiff pleads facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *See Ashcroft v. al–Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The burden is on the plaintiff to overcome a

---

**7.** Plaintiff splits her claims alleging violations of her Fourth Amendment rights against illegal search and seizure into two separate counts.

defendant's invocation of qualified immunity. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

The Supreme Court has held that lower federal courts are not bound to conduct a sequential two-step-qualified-immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

■ Here, the Court finds the second qualified immunity prong dispositive. Specifically, this inquiry—whether the right at issue was "clearly established" at the time of Defendants Laks, Parsa, Solomin, Aguila, Mendez and Telles's alleged misconduct—"must be undertaken in light of the specific context of the case, not as a broad general proposition . . . . ." *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). For the right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (internal citation and quotation marks omitted). The unreasonableness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been illegal. *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir. 2008). The Court must judge the defendant's actions in light of the circumstances being confronted, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) (internal citations and quotation marks omitted).

## 1. Dr. Laks

■ Regarding Dr. Laks, Plaintiff fails to allege that Dr. Laks infringed on Plaintiff's constitutional rights. *See* Compl. 5. Plaintiff only references Dr. Laks in the caption and in Paragraph 15 in her Complaint; therein, she outlines that Dr. Laks "was a state actor" and is liable for "his intentional torts." *See id.* Notably, Plaintiff does not include Dr. Laks in her allegations against the other named Defendants throughout the various counts. *See id.* at 14–18. Plaintiff merely sets forth "labels and conclusions" without sufficient factual matter. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Without "further factual enhancement," the Court is left to surmise what actions Dr. Laks allegedly undertook, if any, against Plaintiff. *See id.* at 557, 127 S.Ct. 1955. Therefore, the Court will dismiss all personal-capacity claims against Dr. Laks.

## 2. Fourth Amendment Search

■ Plaintiff asserts that after she crossed the United States Border, Defendants Parsa, Solomin, Aguila, Mendez, and Telles improperly seized and searched her in violation of the Fourth Amendment. Compl. 2. The issue before the Court is whether medical personnel must have their own independent reasonable suspicion before searching a detained individual suspected of smuggling contraband.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const.

amend. IV. "[W]arrantless searches and seizures are unreasonable per se unless they fall within a few narrowly defined exceptions." *United States v. Rivas*, 157 F.3d 364, 367 (5th Cir. 1998). For instance, the border search exception qualifies as such.

The border search exception provides that government officials "may conduct a routine search—one that does not seriously invade a traveler's privacy at the international border or its functional equivalent without probable cause, a warrant, or any suspicion to justify the search." *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001) (internal citations and quotation marks omitted). "Assuming the search was not routine, it is well established that, for inbound traffic, Customs Agents may conduct 'non-routine' searches at the border or its functional equivalent provided they *reasonably suspect the traveler is smuggling contraband Roberts*, 274 F.3d at 1012 (emphasis added). These non-routine border searches "are more intrusive and require a particularized reasonable suspicion before a search can be conducted." *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir. 2002). Non-routine border searches include body cavity searches, strip searches, and x-ray examinations. *See United States v. Mejia*, 720 F.2d 1378, 1381–82 (5th Cir. 1983) (holding that reasonable suspicion justified abdominal x-ray of suspected drug courier); *United States v. Sandler*, 644 F.2d 1163, 1166 (5th Cir. 1981) (describing reasonable suspicion requirement for strip searches).

At the outset, the Court notes that the border search exception applies not only at the international border, but also at its "functional equivalent." *See Roberts*, 274 F.3d at 1011. Here, Plaintiff alleges that Defendants Parsa, Solomin, Aguila, Mendez, and Telles conducted their search and seizure of Plaintiff at Defendant Hospital—which is in close proximity to the international border. *See* Compl. 2; *see also e.g.*, Def. Dr. Michael Parsa's Am. Mot. to Dismiss 10. Given that a hospital has more accommodating amenities to conduct medical searches, and given its proximity to the intentional border, the Court finds that Defendant Hospital is the "functional equivalent" of the border. *See United States v. Cardenas*, 9 F.3d 1139, 1148 (5th Cir. 1993) ("[T]he reason for allowing such a search to take place other than at the actual physical border is the practical impossibility of requiring the subject searched to stop at the physical border." (quoting *United States v. Niver*, 689 F.2d 520, 526 (5th Cir. 1982))).

According to Plaintiff, Defendants Parsa, Solomin, Aguila, Mendez, and Telles searched her by conducting x-ray, pelvic, and rectal examinations. Compl. 2. Therefore, these non-routine border searches were "more intrusive and require [d] a particularized reasonable suspicion before [the] search [could] be conducted." *See Kelly*, 302 F.3d at 294.

The second prong of the qualified immunity analysis requires the Court to decide whether it is "clearly established" that medical personnel must have their own independent reasonable suspicion before searching a detained individual suspected of smuggling contraband. *See Saucier v. Katz*, 533 U.S. at 200, 121 S.Ct. 2151. It is not.

Plaintiff asks the Court to hold medical professionals to the same standard as law enforcement officers. Yet, a medical professional is trained to perform medical procedures and tasks—not to ascertain whether an individual is engaged in criminal activity. To be sure, to hold medical personnel to this standard would result in doctors and nurses second-guessing law enforcement officers—a task for which they are ill-equipped.

A Ninth Circuit case is instructive on this issue. *See United States v. Velasquez,* 469 F.2d 264, 266 (9th Cir. 1972). In *Velasquez,* custom agents testified that the defendant "appeared nervous and glassy-eyed; the pupils of his eyes were pinpointed; he had a semi-drowsy appearance; there were needle marks on both of his arms, one mark appearing to be fresh; and he did not seem to be under the influence of alcohol, as there was no alcoholic odor on his breath." *Id.* at 265–66. After conducting a strip search, the custom agents saw a "greasy substance" in the defendant's rectal area. *Id.* Based on all these facts, the custom agents had a physician conduct a rectal probe. *Id.* at 266. The defendant contended that the cavity search was unreasonable because the physician was not personally aware of any facts that indicated that the defendant was smuggling narcotics. *Id.* The Ninth Circuit reasoned that the physician need not be apprised of the facts and reasons for the search. *Id.*

> We can see no purpose in requiring the customs agents to recite to the examining physician any of the facts which they have concerning [defendant's] possession of narcotics. Since a physician is required to have no knowledge of the law of search and seizure to practice his profession, any such enumeration of the facts by the agents to the doctor would be a meaningless ritual, and would be comparable to requiring the police to recite to a locksmith the basis for their probable cause before he could legally open a lock for them. We cannot see how such a recitation would serve to strengthen the guarantees of the Fourth Amendment.

*Id.* Rather, the knowledge of the customs agents "was sufficient to justify the rectal search by the physician." *Id.*

While the Court is not aware of the Four Unknown Federal Agents' reasonable suspicion of Plaintiff on the day in question, the Court is mindful of the Plaintiff's allegations that Defendants Parsa, Solomin, Aguila, Mendez, and Telles performed various non-routine examinations. *See* Compl. 8, 16. Akin to the situation in *Velasquez,* Defendants Parsa, Solomin, Aguila, Mendez, and Telles performed searches at the behest of Federal Agents. *See Velasquez,* 469 F.2d at 265–66; *see also* Def. Dr. Michael Parsa's Am. Mot. to Dismiss 12; Def. Dr. Daniel Solomin's Mot. to Dismiss 12; Def. Dr. Jorge Aguila's Mot. to Dismiss 12; See Def. Frank Mendez's Mot. to Dismiss, or in the Alternative, for a More Definite Statement 11; Def. Lynette Telles' [sic] Mot. to Dismiss, or in the Alternative, for a More Definite Statement 9. Yet, the reasoning in *Velasquez* for not requiring physicians to have knowledge of the law of search and seizure applies with even greater force in the instant action. The *Velasquez* physician, in theory, had a host of physical indicators that the defendant was likely smuggling contraband. *See id.* Unlike the present case, the *Velasquez* physician could have articulated with great certainty the reasoning behind the search. *See id.* Despite these physical indicators, the Ninth Circuit did not require the medical professional to inquire about the custom agents' reasoning for the search. *See id.* In contrast, Defendants Parsa, Solomin, Aguila, Mendez, and Telles had no such physical indicators (such as *e.g.*, greasy substance in the rectal area) to suspect, that Plaintiff was engaged in criminal activity. Because Defendants Parsa, Solomin, Aguila, Mendez, and Telles are "required to have no knowledge of the law of search and seizure to practice [their] profession," they are not and cannot be required to articulate reasonable suspicion for the search and seizure of Plaintiff. *See Velasquez,* 469 F.2d at 266; *see also Marshall v. Columbia Lea Reg'l Hosp.,* 345 F.3d 1157, 1180 (10th Cir. 2003) ("To hold medical personnel liable would impose

a greater constitutional duty on medical professionals than on law enforcement, an outcome having no basis in either logic or precedent.").

Further, no Fifth Circuit case has held that doctors must have their own independent reasonable suspicion when conducting a search under the border search exception. To be sure, current law does not provide physicians with a "fair warning" that they must have not only knowledge of the law of search and seizure, but also conform to Fourth Amendment law in their medical practice. *See Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) ("The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." ' (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002))).[8] Without this requirement, the Court cannot definitively state that the law is "clearly established." Thus, the Court finds that Defendants Parsa, Solomin, Aguila, Mendez, and Telles have properly invoked qualified immunity requiring the dismissal of Plaintiff's Fourth Amendment claims against them.

### 3. Fifth Amendment

■■■ Plaintiff brings a § 1983 claim against named Defendants Parsa, Solomin, Aguila, Mendez, and Telles for deprivation of her "due process" rights in violation of the Fifth and Fourteenth Amendments. Compl. 17. She further claims that she "has a clearly established Fifth Amendment right to be free from government conduct that shocks the conscience." *Id.*

■■■ "To demonstrate a viable substantive due process claim, in cases involving government action, the plaintiff must show that the state [or municipality] acted in a manner that 'shocks the conscience.' " *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004) (quoting *Cty. of Sacramento, et al. v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The plaintiff must demonstrate that "the defendant state [or municipal] official at a minimum acted with deliberate indifference toward the plaintiff." *See McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002). "To act with deliberate indifference, a state [or municipal] actor must consciously disregard a known and excessive risk to the victim's health and safety." *See Hernandez*, 380 F.3d at 880. Proving deliberate indifference is "a significantly high burden for plaintiffs to overcome." *Id.* at 882.

Here, for Plaintiff to overcome the high deliberate indifference standard, she must allege that Defendants Parsa, Solomin, Aguila, Mendez, and Telles knew of a risk to her health and safety. *See McClendon*, 305 F.3d at 325. Plaintiff alleges that she was "humiliated and traumatized" both "physically and emotionally." *See* Compl. 8. Yet, Plaintiff does not allege that these Defendants "consciously disregarded] a known and excessive risk to [Plaintiffs] health and safety." *See Hernandez*, 380 F.3d at 880. Instead, Plaintiff merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Accordingly, Plaintiff has fallen woefully short of meeting this "high burden" of alleging de-

---

8. The Court's opinion today does not mean that medical personnel can always hide behind the direction of Federal Agents. Rather, when medical professionals are tasked with providing services that fall within the scope of their professional duties, they are not expected to properly conduct searches that comply with Fourth Amendment jurisprudence.

liberate indifference. *See Hernandez*, 380 F.3d at 882.

Therefore, the Court finds that Defendants Parsa, Solomin, Aguila, Mendez, and Telles have properly invoked qualified immunity requiring dismissal of Plaintiff's Fifth Amendment claims.

### D. Protective Orders

Drs. Laks, Parsa, Solomin, and Aguila have filed motions for protection seeking the delay of discovery until the Court adjudicates their respective motions to dismiss. Given that the Court has dismissed all claims against Drs. Laks, Parsa, Solomin, and Aguila, the Court finds that their motions for protection are now moot. *See Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995) ("If [the plaintiff's] complaint falls short of this [pleading] standard, the district court should rule on the motion to dismiss before any discovery is allowed.").

### IV. CONCLUSION

The Court dismisses Plaintiff's intentional-tort claims against Drs. Laks, Parsa, Solomin, and Aguila because their employer, Former Defendant Texas Tech, moved to dismiss the intentional-tort claims against them pursuant to § 101.106(e). Similarly, the Court dismisses Plaintiff's intentional-tort claims against Nurses Mendez and Telles because they have not waived governmental immunity. Moreover, Plaintiff fails to specify which intentional torts, if any, Defendants committed.

The Court dismisses Plaintiff's official-capacity claims against Drs. Laks, Parsa, Solomin, and Aguila because Plaintiff has only sought retrospective relief. In the same vein, the Court dismisses Plaintiff's official-capacity claims against Nurses Mendez and Telles because Plaintiff redundantly sought identical claims against Defendant Hospital—the municipal-entity.

The Court dismisses Plaintiff's Fourth-Amendment-personal-capacity claims against Defendants Parsa, Solomin, Aguila, Mendez, and Telles because the law is not clearly established on requiring medical personnel to have their own reasonable suspicion when performing a search under the border search exception. Likewise, the Court dismisses Plaintiff's Fifth-Amendment-personal-capacity claims against Defendants Parsa, Solomin, Aguila, Mendez, and Telles for failing to demonstrate that these defendants acted with deliberate indifference toward her. In addition, the Court dismisses all personal-capacity claims against Dr. Laks because Plaintiff merely provided labels and conclusions without sufficient factual matter.

Consequently, all claims against Defendants Laks, Parsa, Solomin, Aguila, Mendez, and Telles are dismissed.

Finally, the Court dismisses Drs. Laks, Parsa, Solomin, and Aguila's motions for protection as moot because the Court has dismissed all counts against them.

Accordingly, **IT IS ORDERED** that Defendant Dr. Shaked Laks's "Amended Motion to Dismiss" (ECF No. 37) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Dr. Michael Parsa's "Amended Motion to Dismiss" (ECF No. 38) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Dr. Daniel Solomin's "Motion to Dismiss" (ECF No. 76) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Dr. Jorge Aguila's "Motion to Dismiss" (ECF No. 77) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Frank Mendez's "Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 81) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Lynette Telles's "Motion to Dismiss, or in the Alternative, for a More Definite Statement" (ECF No. 82) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Laks's "Opposed Motion for Protection" (ECF No. 42) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant Parsa's "Opposed Motion for Protection" (ECF No. 43) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Defendant Solomin's "Opposed Motion for Protection" (ECF No. 79) is **DENIED AS MOOT**

**IT IS FINALLY ORDERED** that Defendant Aguila's "Opposed Motion for Protection" (ECF No. 80) is **DENIED AS MOOT.**