# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50022

GLORIA BUSTILLOS,

      Plaintiff - Appellant

v.

EL PASO COUNTY HOSPITAL DISTRICT; UNIVERSITY MEDICAL CENTER; FRANK MENDEZ; LYNETTE TELLES; DANIEL SOLOMIN; MICHAEL PARSA,

      Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas

Before KING, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

This case stems from a series of increasingly intrusive body searches performed by state medical staff during a border stop in El Paso, Texas. The district court dismissed Appellant's claims based on qualified immunity, failure to allege a valid claim for county liability under § 1983, and failure to meet Texas state tort standards. We affirm.

## BACKGROUND

### I.    The Search and Seizure

Appellant Gloria Bustillos ("Bustillos") is a U.S. citizen. On September 19, 2013, Bustillos was crossing the Paso del Norte bridge from Juarez, Mexico,

No. 17-50022

to El Paso, Texas. Bustillos did not have any illegal drugs or contraband. After presenting her passport to Customs and Border Protection agents, Bustillos was immediately taken into custody despite telling agents that she was not in possession of narcotics. An increasingly intrusive series of searches followed.

First, two female agents conducted a pat down. The agents found no drugs. The agents then held Bustillos for a K-9 search. The K-9 failed to alert to the presence of drugs. Two agents then took Bustillos to a restroom, where they ordered her to pull down her pants and underwear and bend over slightly. The agents conducted a visual inspection of Bustillos' vaginal and anal area. Again, the agents found no drugs. Despite no evidence of drugs, the agents placed tape on Bustillos' legs and abdomen, handcuffed her, and transported her to the University Medical Center (the "Hospital") in El Paso.

At the Hospital, Doctors Michael Parsa and Daniel Solomin (the "Doctors") ordered a series of x-rays to search for drugs. The x-rays revealed no drugs. The Doctors then performed a pelvic exam. Again, the pelvic exam evidenced no drugs. Solomin then conducted a rectal exam. Yet again, Solomin found no evidence of drugs. As part of these searches, the Doctors, and Nurses Lynette Telles and Frank Mendez (the "Nurses"),[1] allegedly "brutally" probed Bustillos' cavities in the presence of hospital personnel. Bustillos did not consent to any of the above searches.

At approximately 4:00 a.m. the next morning, after finding no evidence of narcotics, the Doctors released Bustillos to CBP agents, who drove Bustillos to the international bridge and released her.

---

[1] Though Bustillos did not specifically name the Nurses while describing these probes, Bustillos' complaint names Lynette Telles and Frank Mendez as defendants, who were "acting within the scope of [their] employment as a nurse" at UMC at the time of the probes.

No. 17-50022

## II.   Procedural History

On September 18, 2015, Bustillos filed a complaint in a Texas state court alleging *Bivens* and § 1983 claims against various state and federal actors. The Hospital timely removed the case to federal court.

Pertinent to this appeal, Bustillos alleged § 1983 claims under the Fourth, Fifth, and Fourteenth Amendments against the Doctors and Nurses in their individual capacities. Bustillos further asserted a § 1983 claim against the El Paso County Hospital District/University Medical Center (the "District")[2] under a county liability theory.[3] Bustillos next asserted a claim under the Texas Tort Claims Act ("TTCA") against the District. Though not listed as a cause of action, Bustillos maintained below, and on appeal, that she asserted intentional tort claims against the Doctors and Nurses under Texas law.

All of the relevant defendants filed motions to dismiss under 12(b)(6) and 12(b)(1), asserting various immunity theories. Solomin also filed a motion for a protective order, seeking to prevent discovery until the district court ruled on his qualified immunity defense.

Without ruling on the protective order, the district court granted the motions to dismiss on all claims. The district court granted qualified immunity to the individual defendants against the § 1983 claims and held that the tort claims failed on immunity and Texas statutory grounds. As to the District, the court found that Bustillos had failed to sufficiently allege any of the necessary

---

[2] Bustillos' Amended Complaint asserts § 1983 claims against both the District and the Hospital. The district court noted that the Hospital and the District are the same entity. Bustillos does not challenge that determination on appeal.

[3] Bustillos additionally brought claims against Texas Tech University Health Sciences Center, which the district court remanded to state court. Bustillos does not challenge that remand, and we therefore do not address those claims.

elements for county liability under § 1983 and failed to timely give notice for her state tort claims.

This appeal timely followed.

## DISCUSSION

Bustillos' arguments on appeal can be divided into three broad categories. First, she challenges the dismissal of her constitutional claims. Second, she challenges dismissal of her state tort claims. Third, she challenges the district court's failure to allow discovery prior to ruling on the motions to dismiss. We discuss each category in turn.

## I.     Constitutional Claims

Bustillos alleged § 1983 claims against the Doctors and Nurses in their individual capacities, as well as against the District on a county liability theory. Because disposition of the individual liability claims resolves both the individual and county liability causes of action, we address only those claims in detail. Before doing so, however, we discuss whether Bustillos' claims for substantive due process violations are cognizable as alleged.

### A.     Substantive Due Process Claims Not Cognizable

Bustillos alleges that the searches violated substantive due process standards because they were conducted "in a manner that shocks the conscious." We need not reach this issue. Bustillos' substantive due process claims are not cognizable with her Fourth Amendment allegations.

The Supreme Court has "always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266,

No. 17-50022

273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989)).

Bustillos' substantive due process claims rest on the same underlying acts that constituted the alleged unlawful search and seizure. Because the Fourth Amendment "fully embraces" these allegations, the district court did not err in dismissing the substantive due process claims. *See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 411 (5th Cir. 2002).

## B.    Personal Capacity § 1983 Claims

Bustillos argues that the Doctors and Nurses violated her Fourth Amendment right to be free from unreasonable searches and seizures by detaining her in order to conduct x-ray, pelvic, and rectal exams without reasonable suspicion of criminal activity. The district court held those allegations cannot overcome the Doctors' and Nurses' qualified immunity because the right at issue was not clearly-established. We agree and affirm on that ground. Nonetheless, we take this opportunity to clarify the constitutional duties of medical staff when they cooperate with law enforcement searches.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1.    Constitutional Violation

The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const.

5

amend. IV. "[W]arrantless searches and seizures are per se unreasonable unless they fall within a few narrowly defined exceptions." *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993). "One important exception is the border search doctrine," which allows "a governmental officer at the international border [to] conduct routine stops and searches without a warrant or probable cause." *Id.* Nonetheless, for a "non-routine" search at the border, officials must "reasonably suspect the traveler is smuggling contraband." *United States v. Roberts*, 274 F.3d 1007, 1012 (5th Cir. 2001). Cavity searches, strip searches, and x-ray examinations are all "non-routine." *United States v. Kelly*, 302 F.3d 291, 294 (5th Cir. 2002). "Because [the District] is a state hospital, the members of its staff are government actors, subject to the strictures of the Fourth Amendment." *See Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001).

The searches conducted at the Hospital were all non-routine. The Doctors and Nurses therefore needed reasonable suspicion of drug smuggling to constitutionally justify those searches. Whether the Doctors and Nurses had reasonable suspicion turns on an issue of first impression in this circuit: Must medical staff establish their own, independent reasonable suspicion where law enforcement officers either state that sufficient suspicion exists or request the search? We conclude they do not. A medical professional has no constitutional duty to independently evaluate the Fourth Amendment determinations of law enforcement officers. Nonetheless, medical staff must, either through their own independent determination or through reliance on law enforcement officials, have sufficient suspicion to justify *each* search in a series of non-routine searches.

Though there is no Fifth Circuit case on point, our sister courts have held that medical professionals do not violate the Constitution where they rely on law enforcement officers' Fourth Amendment determinations. *See Marshall v.*

*Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1178-81 (10th Cir. 2003); *Rodriques v. Furtado*, 950 F.2d 805, 810 (1st Cir. 1991); *United States v. Velasquez*, 469 F.2d 264, 266 (9th Cir. 1972). This approach is sensible. "Nurses and other medical personnel have neither the training nor the information that would be necessary to second-guess police determinations regarding probable cause, exigent circumstances, and the like." *Marshall*, 345 F.3d at 1180.[4]

However, in each of these cases, the officers presented the medical professionals with either a warrant, direct request for a specific search, or other articulation of adequate suspicion. *See id.* at 1179 (granting qualified immunity where nurse conducted blood test "at behest of police officers" who "signed the consent form"); *Furtado*, 950 F.2d at 810-11 (granting qualified immunity where doctor performed cavity search pursuant to a warrant); *Velasquez*, 469 F.2d at 266 (holding that CBP officer's "clear indication" that contraband was hidden was "sufficient to justify the rectal search" by physician).

A different set of facts is presented where an "examining physician conduct[s] a [search] without a request to do so by the customs agent; and neither the physician nor the [law enforcement] agents . . . ha[ve] real suspicion [the individual] [is] concealing narcotics." *See Velasquez*, 469 F.2d at 266. For

---

[4] We do not resolve a related but distinct question: under what circumstances may a medical professional be held liable for the manner in which a particular search is conducted. Under Supreme Court caselaw, even if a particular type of compelled bodily intrusion is justified by the circumstances, it may still violate the Fourth Amendment if performed in an "improper manner." *See Schmerber v. California*, 384 U.S. 757, 768 (1966); *cf. Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (noting that while suspicionless visual body-cavity inspections in prison are generally permissible, "[t]he searches must be conducted in a reasonable manner"). To determine whether a particular procedure was conducted in an improper manner, other courts of appeals have focused on several factors: location, hygiene, medical training, emotional and physical trauma, and the availability of alternatives. *See, e.g., United States v. Fowlkes*, 804 F.3d 954, 963 (9th Cir. 2015). We need not pass on those factors today. The complaint is ambiguous as to whether the examinations were conducted in an improper manner and the precise contours of the right were not clearly established under our law at the time of the searches.

instance, in *Huguez v. United States*, 406 F.2d 366 (9th Cir. 1968), officers did not articulate to medical staff any information indicating that the search was reasonable. *Id.* at 378-79. Nor did the officers presenting the plaintiff to the doctor have any reasonable suspicion themselves. *Id.* Nonetheless, the doctor conducted a probe, "on his own initiative without any request or suggestion that he do so." *Id.* at 378. The Ninth Circuit found that search to be unconstitutional. *Id.* at 379.

Accordingly, Bustillos' allegations could potentially assert a constitutional violation. The complaint is, however, ambiguous on critical factual allegations. For instance, it is unclear who Bustillos alleges actually ordered the various searches. Further, it is unclear what the CBP officers told medical staff regarding their basis for requesting the various searches. These facts are important because the officers' articulation of probable cause for a minimally invasive search, such as the x-ray, would not necessarily shield the Doctors and Nurses from liability for the more intrusive searches, such as the rectal probe, if the officers did not request that search or represent that sufficient suspicion justified it.[5] However, if the officers requested all of the medical examinations, the Doctors and Nurses would have a strong argument that they had no duty to second-guess the Fourth Amendment basis for those searches.

Regardless, we need not determine the sufficiency of Bustillos' allegations. Even if the complaint sufficiently alleges a Constitutional violation, the violated right was not clearly established under our law at the time of the searches.

---

[5] We do not resolve whether medical professionals can be held liable under the Fourth Amendment for procedures they perform for medical reasons and not at the behest of law enforcement. *See United States v. Chukwubike*, 956 F.2d 209, 212 (9th Cir. 1992) ("Invasions of the body by doctors for medical purposes are neither a search nor a seizure.").

### 2.    Clearly Established Right

We cannot "define clearly established law at a high level of generality." *See al-Kidd*, 563 U.S. at 742. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004)). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. "It is the plaintiff's burden to find a case in [her] favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016)).

Appellant has not carried her burden of pointing this panel to any case that shows, in light of the specific context of this case, that the Doctors' or Nurses' conduct violated clearly established law. Further, our independent review has uncovered only one case, *Huguez*. Though we find the analysis in *Huguez* persuasive, and adopt it above, we are not persuaded that a single, fifty year old case from another circuit is sufficient in this instance to have "placed the . . . constitutional question [at issue] beyond debate." *See Al-Kidd*, 563 U.S. at 741.

The district court did not err in granting the Doctors and Nurses qualified immunity.

### C.    County Liability § 1983 Claims

Because Bustillos did not demonstrate a clearly established right, it follows that her claims for deliberate indifference against the District also fail.

The Amended Complaint's county liability theory is premised on the District's "deliberate indifference" to the need "to train its personnel in how to handle government request[s] for body cavity searches." However, a "policymaker cannot exhibit fault rising to the level of *deliberate* indifference

No. 17-50022

to a constitutional right when that right has not yet been clearly established." *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393 (8th Cir. 2007) (*en banc*)). The district court properly dismissed the county liability claim.[6]

## II.    State Tort Claims

Bustillos argues that the district court erred in dismissing her intentional torts claim against Doctor Solomin. We disagree. The court properly concluded that Bustillos' state tort claims fail under the TTCA.

"The TTCA provides a limited waiver of immunity for certain suits against Texas governmental entities." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). "But a plaintiff who sues under the TTCA must elect pursuant to § 101.106 of that act between suing a governmental unit and suing an employee of that unit." *Id.* "If the plaintiff sues both the governmental unit and any of its employees under the TTCA, 'the employees shall immediately be dismissed on the filing of a motion by the governmental unit.'" *Id.* (quoting Tex. Civ. Prac. & Rem. Code § 101.106(e)).

The Amended Complaint asserted tort claims against both Texas Tech and its employee Doctors. The conduct and injuries underlying all of those torts stemmed from the same allegations. Texas Tech filed a motion to dismiss its employees pursuant to § 101.106(e). Accordingly, the district court properly

---

[6] In dismissing the county liability claims, the district court stated that it had found the Doctors and Nurses "did not violate the constitution." This is not our understanding of the district court's qualified immunity analysis, which found "the second qualified immunity prong dispositive." Granting of qualified immunity on the "clearly-established" prong is not the same as holding that no constitutional violation occurred. That would conflate the two prongs of qualified immunity. Thus, a grant of qualified immunity based on the "clearly-established" prong does not necessarily negate the constitutional violation element of a county liability claim, as the district court erroneously assumed. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 61-63 (2d Cir. 2014); *Veneklase v. City of Fargo*, 78 F.3d 1264, 1268-70 (8th Cir. 1996).

dismissed the tort claims against the Doctors because Bustillos had also sued their employer entity.

Bustillos' arguments asserting error are unavailing. In *Bustos*, we directly rejected the argument that § 101.106(e) does not bar claims for intentional torts such as assault and battery. 599 F.3d at 463. *Bustos* also rejected a claim that § 101.106(f) dismissal is improper if the tort claim is not brought directly under the Texas Tort Claims Act. *See id.* (stating that common law tort claims without a statutory basis are assumed to have been brought under the TTCA).

The district court did not err in dismissing the intentional tort claims against the Doctors.

### III.  The Discovery Issue

Bustillos claims that the district court abused its discretion by failing to grant her requests to conduct discovery prior to ruling on the motions to dismiss. We disagree.

Both motions for protective orders noted that the Doctors had asserted qualified immunity. "One of the most salient benefits of qualified immunity is protection from pretrial discovery . . . ." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Thus, "[b]efore allowing discovery in a matter where qualified immunity is alleged, the district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome' a qualified immunity defense." *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014) (quoting *Backe*, 691 F.3d at 648).

Because Bustillos' claims could not overcome the clearly-established prong of the qualified immunity defense, the district court did not err by declining to grant Bustillos' discovery requests.

No. 17-50022

## CONCLUSION

Though the treatment Bustillos allegedly suffered is concerning, Bustillos has failed to assert a valid claim for relief under either Texas state law or the law of our circuit at the time of the alleged conduct. We **AFFIRM** in full.