# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2010

No. 09-50079

Charles R. Fulbruge III
Clerk

ERNEST BUSTOS,

Plaintiff–Appellant

v.

MARTINI CLUB INCORPORATED; WAYNE E HARPER; ANNETTE HARPER; GUILLERMO CANTU, Officer, also known as Willie; OFFICER KYLE GOODWIN, Badge No. 0377; OFFICER PETE VEGA, Badge No. 1389; OFFICER DAVID LARIOS, Badge No. 0202; OFFICER CARLOS ALEX GARZA, Badge No. 681; CITY MANAGER SHERYL SCULLEY; WILLIAM MCMANUS, Chief of Police; CITY OF SAN ANTONIO,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CV-667

Before SMITH, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Ernest Bustos, pro se, appeals the district court's grant of a motion to dismiss in favor Officer Guillermo Cantu, Officer Kyle Goodwin, Officer Pete Vega, Officer David Larios, Officer Carlos Alex Garza, Sheryl Sculley, William McManus, and the City of San Antonio on his claims under 42 U.S.C. § 1983 and Texas state law.  Bustos also appeals the district court's grant of summary

No. 09-50079

judgment in favor of Martini Club Inc., Wayne Harper, and Annette Harper. For the following reasons, we affirm.

## I

Bustos's claims arise out of a late-night confrontation with several off-duty police officers at the Martini Club in San Antonio. Bustos's complaint presents the facts as follows. Bustos was at the bar, waiting to pay his tab, and a group of San Antonio police officers were standing at the end of the bar near the front door. In an effort to gain the bartender's attention, Bustos moved toward the officers, who "appeared intoxicated and were quite boisterous." Officer Cantu then accused Bustos of pushing him and cursed at Bustos. After Bustos "calmly responded that he had not pushed Officer Cantu," the officer cursed again and lunged at him, "striking him in the face with the intent of causing permanent damage to his eye." Officers Goodwin, Vega, Larios, and Garza "watched and laughed" as Bustos tried to defend himself.

According to the complaint, because the officers were blocking the front door, Bustos tried to leave through the club's backdoor. But when he attempted to exit, the officers were waiting for him in the alley. They then reentered through the backdoor, "holding each other's shoulders as a group of SWAT officers showing force." As Bustos turned to go back towards the front door, "he was violently and maliciously pushed from behind off the [elevated] main seating area onto the concrete floor by Officer Goodwin." Bustos alleges that he sustained injuries to his face, left hand, and chest as a result of the fall.

Bustos's complaint also contains allegations regarding events after the alleged assault. He states that he immediately called 911, but that the operator would not assist him since he could not identify the badge numbers of the officers who assaulted him. He also alleges that he made a complaint about the incident to the San Antonio Police Department Division of Internal Affairs but that the division failed to investigate because of its "endemic corruption."

No. 09-50079

Bustos brought suit against Officers Cantu, Goodwin, Vega, Larios, and Garza (collectively, the Officers), the City of San Antonio (the City), City Manager Sheryl Sculley, and Chief of Police William McManus, as well as the Martini Club and its owners, Wayne and Annette Harper.  Bustos asserted a claim under 42 U.S.C. § 1983 against the Officers, the City, Sculley, and McManus for violation of his substantive due process rights.  Bustos also brought state law claims against the Officers for assault, battery, false imprisonment, intentional infliction of emotional distress, and invasion of privacy.  Bustos asserted a state tort law claim against the City, Sculley, and McManus for negligent hiring.  He asserted state law claims against the Martini Club and the Harpers for negligence, negligent hiring, and retaliation.  In addition, he attempted to bring various criminal charges against the Officers.

The district court granted a Rule 12(b)(6) motion to dismiss the claims against the City, the Officers, Sculley, and McManus.  The court then granted summary judgment in favor of the Martini Club and the Harpers.  Bustos now appeals the dismissal of his state law and § 1983 claims against the Officers, the City, Sculley, and McManus, as well as the grant of summary judgment in favor of the Martini Club and the Harpers.  He does not appear to contest the dismissal of his attempts to bring criminal charges.

II

We review a district court's grant of a motion to dismiss for failure to state a claim de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[1]  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that

---

[1] *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009).

3

is plausible on its face."[2]  Still, "[i]t is well-established that pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers."[3]

## A

Bustos first contends that the district court erred in determining that his claims against the City were brought under the Texas Tort Claims Act (TTCA), thereby requiring the dismissal of his state law claims against the Officers.

The TTCA provides a limited waiver of immunity for certain suits against Texas governmental entities.[4]  But a plaintiff who sues under the TTCA must elect pursuant to § 101.106 of that act between suing a governmental unit and suing an employee of that unit.[5]  A plaintiff's suit under the TTCA "against a governmental unit constitutes an irrevocable election by the plaintiff" and bars suit "against any individual employee of the governmental unit regarding the same subject matter."[6]  A plaintiff's suit against an employee of a governmental unit is also considered an "irrevocable election" and bars suit "against the governmental unit regarding the same subject matter unless the governmental unit consents."[7]  If the plaintiff sues both the governmental unit and any of its employees under the TTCA, "the employees shall immediately be dismissed on the filing of a motion by the governmental unit."[8]  As the Supreme Court of

---

[2] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (internal quotation marks and citation omitted).

[4] *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).

[5] *See* TEX. CIV. PRAC. & REM. CODE § 101.106.

[6] *Id.* § 101.106(a).

[7] *Id.* § 101.106(b).

[8] *Id.* § 101.106(e).

No. 09-50079

Texas has explained, the provision's "apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable."[9]

The district court ruled that § 101.106 required the dismissal of Bustos's state law intentional tort and invasion of privacy claims against the Officers. The court acknowledged that Bustos did not specify that he was suing under the TTCA. But it nevertheless dismissed the claims, relying on the reasoning in *Garcia*. There, the Texas Supreme Court held that a suit asserting common law claims against a Texas governmental unit, as distinguished from statutory claims, is considered to be under the TTCA.[10] The court reasoned that because the TTCA "is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under the Tort Claims Act' for purposes of section 101.106."[11]

The *Garcia* decision is at odds with this circuit's interpretation of Texas state law in *Meadours v. Ermel*.[12] Because we are "a strict *stare decisis* court," one panel's interpretation of state law is "no less binding on subsequent panels than are prior interpretations of federal law."[13] We accordlingly apply panel precedent "absent a subsequent state court decision or statutory amendment

---

[9] *Garcia*, 253 S.W.3d at 657.

[10] *Id.* at 659.

[11] *Id.*

[12] 483 F.3d 417 (5th Cir. 2007).

[13] *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998).

which makes [the panel decision] clearly wrong."[14]  We must determine if the Texas Supreme Court decision renders *Meadours* clearly wrong.

In *Meadours*, the plaintiffs brought a § 1983 claim against the City of La Porte and several police officers for excessive force and also sued all of the defendants under Texas state law on theories of gross negligence, assault and battery, and intentional infliction of emotional distress.[15]  The panel determined that § 101.106 did not require the dismissal of the plaintiffs' state law claims against the officers.  The panel reasoned that the TTCA did not apply to intentional torts,[16] relying on a provision in the TTCA that explicitly states that "[t]his chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort."[17]  The panel thus concluded that § 101.106 did not bar plaintiffs' claims since they were not covered by the TTCA.[18]

In contrast, the Texas court held in *Garcia* that the TTCA applied and could bar a plaintiff's intentional tort claim against an employee when the plaintiff had sued both the employee and the governmental unit that employed him.[19]  In doing so, the court interpreted the following language in § 101.106(e): "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  The court explained that "under this chapter" does not limit the statute's reach to tort claims for which the TTCA

---

[14] *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001).

[15] 483 F.3d at 421.

[16] *Id.* at 424.

[17] TEX. CIV. PRAC. & REM. CODE § 101.057(2).

[18] *Meadours*, 483 F.3d at 424.

[19] 253 S.W.3d at 658-59.

waives immunity.[20] The court then reasoned that, because the TTCA was the only avenue for common-law recovery against a governmental unit, all tort claims against such units were assumed to be "under this chapter" for purposes of § 101.106.[21] As a result of this ruling, if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves. That this holding applies to intentional torts is clear since the claim at issue in *Garcia* was one for intentional infliction of emotional distress, and since the court expressly noted an earlier decision in which it had held that the previous version of § 101.106 applied to intentional torts.[22] The *Meadours* panel's holding that § 101.106 does not apply to intentional torts is contrary to the Texas Supreme Court's subsequent holding. Accordingly, we defer to the Supreme Court of Texas and hold that the election of remedies provisions in § 101.106 apply to state law intentional tort claims against a governmental unit and its employees.

**B**

Having determined that the district court correctly interpreted the law in this regard, we must consider whether the district court correctly applied the law to Bustos's complaint. The court concluded that Bustos had alleged common law causes of action for assault, battery, false imprisonment, intentional infliction of emotional distress, and invasion of privacy against the

---

[20] *Id.* at 658.

[21] *Id.* at 659.

[22] *Id.* at 658 ("[W]e held that former section 101.106's limiting phrase 'under this chapter' operated to bar an intentional tort claim against an employee after a final judgment on a claim involving the same subject matter had been rendered against the governmental unit, even though the [TTCA] by its terms expressly excluded intentional torts from the scope of the Act's immunity waiver.") (citing *Newman v. Obersteller*, 960 S.W. 2d 621, 622-23 (Tex. 1997))(internal footnote omitted).

Officers, and that he had alleged the same causes of action against the City under theories of vicarious liability and ratification. The court therefore ruled that Bustos's claims fell under § 101.106(e), requiring dismissal of the claims against the Officers.

We agree that Bustos's claims against the Officers must be dismissed. Although it is unclear whether Bustos alleged that the City was vicariously liable for the intentional torts, he did bring a common law claim against the City for negligent hiring and supervision that is rooted in the same alleged common law violations. He does not state that the claim is under the TTCA, but because it is a tort theory against a governmental unit without any statutory basis, it is "assumed to be under the Torts Claims Act for purposes of section 101.106."[23] Since the suit is against "both a governmental unit and any of its employees," § 101.106(e) applies. Accordingly, because the City moved to dismiss the Officers, the district court was required by § 101.106(e) to dismiss the state law claims against them.

## III

Bustos also challenges the district court's dismissal of his § 1983 claims against the Officers. The district court ruled that Bustos had failed to plead that the Officers acted under color of state law.

## A

We will first consider Bustos's claims against Officers Cantu and Goodwin, who plaintiff alleges assaulted him. Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.[24] A person acts under color of state law if he misuses "power 'possessed by virtue of state law and made

---

[23] *Id.* at 659 (internal quotation marks, brackets, and citation omitted).

[24] 42 U.S.C. § 1983.

possible only because the wrongdoer is clothed with the authority of state law.'"[25] "Under 'color' of law means under 'pretense' of law."[26] Acts of officers performing their official duties "are included whether they hew to the line of their authority or overstep it," but acts of officers "in the ambit of their personal pursuits" are generally excluded.[27]

Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation.[28] Rather, the court must consider: (1) whether the officer "misuse[d] or abuse[d] his official power," and (2) if "there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties."[29] If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law.[30]

We have previously considered cases concerning police officers pursuing violent private aims. For instance, in *United States v. Tarpley*, we held that a deputy sheriff acted under color of state law when he lured his wife's former lover to his home and assaulted him.[31] The court noted that Tarpley did not

---

[25] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[26] *Screws v. United States*, 325 U.S. 91, 111 (1945); *see also Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (explaining that an act of an officer, not taken with authority or under cloak of authority, will not be considered under color of state law "simply because the individual, although pursuing private aims, happens to be a state officer").

[27] *Screws,* 325 U.S. at 111.

[28] *United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991).

[29] *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

[30] *Id.*

[31] 945 F.2d at 809.

"simply" use his service weapon and identify himself as a police officer.[32]  He claimed to have authority for his actions because he was an officer of the law.[33] The court also found it significant that Tarpley summoned another officer to his house, who identified himself as a fellow officer, and that they "proceeded to run [the victim] out of town in their squad car."[34]  Because "[t]he presence of police and the air of official authority pervaded the entire incident," we concluded that Tarpley acted under color of law.[35]

In *United States v. Causey*, we held that there was sufficient evidence for a jury to conclude that a police officer acted under color of state law in arranging for the murder of an individual who had filed a complaint against him with the internal affairs division of the police department.[36] We explained that the officer had met with his co-conspirators in the police station, driven them in his police car to areas the victim frequented, and had discussions with them during his shifts.[37] We further reasoned that the officer's status as a police officer had "put him in the unique position" to offer protection to his co-conspirators and cover up the murder.[38]

In each of these cases, the officer used his official power to facilitate his actions.  But here, Bustos does not allege facts to suggest that the officers who assaulted him misused or abused their official power.  His allegations suggest that, at the time of the incident, the officers were off-duty and enjoying drinks

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] 185 F.3d 407, 415-16 (5th Cir. 1999).

[37] *Id.* at 415.

[38] *Id.*

at the bar with female companions.  He does not allege that either officer was in uniform.  He alleges that Officer Cantu assaulted him, but he does not allege that Cantu used an official weapon or threatened him by asserting his authority as a police officer.  He alleges that Officer Goodwin "violently and maliciously pushed [him] from behind," but again, the allegations contain no suggestion that the officer was misusing his official authority in any manner.  Simply put, no "air of authority" pervaded this barroom altercation.

We are mindful that we must construe Bustos's pro se complaint liberally.[39]  But because he asserts no facts that would suggest that the use of force by Officers Goodwin and Cantu was a misuse of their power as state officers, he has not sufficiently alleged that their actions were under color of state law.

**B**

We will now consider Bustos's claims against the bystander officers. Under § 1983, to state a claim that inaction equates to action under color of state law when the alleged wrongdoer is not a supervisory governmental official, the plaintiff must identify "some cognizable duty that state or federal law imposes upon the alleged 'enactor.'"[40]

The district court ruled that the off-duty officers had no duty to act under state law.  But this is incorrect, as under Texas law, "[i]t is the duty of every peace officer to preserve the peace within the officer's jurisdiction."[41]  This obligation applies to off-duty officers, since "[a]n off-duty police officer who

---

[39] *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 (5th Cir. 1996).

[40] *Doe v. Claiborne County*, 103 F.3d 495, 512 (5th Cir. 1996).

[41] T EX. CODE CRIM. PROC. art. 2.13(a).

11

observes a crime immediately becomes an on-duty police officer."[42] However, not every breach of a state law duty is action under color of state law.[43] But we need not decide whether this alleged breach of duty constitutes action under color of state law, because Bustos has failed to allege a claim that the bystander officers violated § 1983.

Bustos contends that the officers' inaction violated his substantive due process rights. In *DeShaney v. Winnebago County Department of Social Services*, the Supreme Court held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[44] The Court clarified that the rule is not absolute, since when a state restrains an individual's freedom to act on his own behalf, the state creates a "special relationship" between the individual and the state, and "the Constitution imposes upon [the state] a corresponding duty to assume some responsibility for [the person's] safety and general well-being."[45] As we noted in *McClendon*, a number of our sister circuits have read the *DeShaney* opinion to suggest that in addition to the "special relationship" exception to the general rule against state liability for private violence, a state

---

[42] *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W. 2d 374, 377 (Tex. App.—Dallas 1994, no writ); *see also Harris County v. Gibbons*, 150 S.W. 3d 877, 882 (Tex. App.—Houston 2004, no pet.); *Fifth Club, Inc. v. Ramirez*, 196 S.W. 3d 788, 800 (Tex. 2006) (Brister, J., concurring).

[43] *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1411 (5th Cir. 1995).

[44] 489 U.S. 189, 197 (1989).

[45] *Id.* at 199-200; *see also McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002).

No. 09-50079

may be liable for private violence if it created or exacerbated the danger.[46]  But this circuit has not adopted the state-created danger theory.[47]

Regardless, the state-created danger theory would not apply here.  As discussed *supra*, the alleged danger to Bustos was created by off-duty officers who were *not* acting under color of state law.  Bustos was allegedly harmed by private individuals at a public club.  That the alleged assaulters happened to be off-duty police officers does not render the assault a state-created danger.[48]  Because the bystander officers had no constitutional duty to prevent the alleged assault, Bustos has failed to state a claim against them under § 1983.

## IV

Bustos next contends that the district court erroneously dismissed his claims against the City.

## A

A municipal liability claim under § 1983 requires a showing that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[49]

Bustos's § 1983 allegations do not make clear which constitutional rights the City allegedly violated.  He alleges that the City "foster[ed] an environment

---

[46] 305 F.3d at 324.

[47] *Id.* at 325; *see also Rios v. City of Del Rio,* 444 F.3d 417, 422 (5th Cir. 2006) (noting that "neither the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof"); *Beltran v. Houston Indep. Sch. Dist.*, 367 F.3d 299, 307 (5th Cir. 2004) (explaining that "[t]his court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability"); *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 & n.5 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause.").

[48] *See Pitchell v. Callan*, 13 F.3d 545, 548-49 (2d Cir. 1994) (holding that *DeShaney* barred a claim against an off-duty policy officer who failed to intervene when another officer, not acting under color of state law, shot a guest in his home).

[49] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

13

No. 09-50079

of obstruction" which allowed its police officers to violate his civil rights and "failed to train and control SAPD officers." He alleges that the City's conduct "was such that it shocks the conscience." Bustos further alleges that the City's 911 dispatcher failed to come to his aid since he could not identify the badge numbers of the officers involved.

Because Bustos has alleged no constitutional injury attributable to the Officers, Bustos has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights. The Supreme Court has explained that a municipality cannot be liable "[i]f a person has suffered no constitutional injury at the hands of the individual police officer."[50] While other courts have cautioned that a municipality may still be liable if the alleged injuries are not "solely attributable to the actions of named individual defendants,"[51] Bustos's injuries from his failure-to-train claim stem solely from the Officers' conduct. Since the Officers did not violate Bustos's constitutional rights, neither did the City.

In addition, we can ascertain no constitutional violation from Bustos's claim that a 911 dispatcher failed to respond to his call for aid. Accordingly, the district court correctly dismissed Bustos's § 1983 claims against the City.

**B**

The district court also correctly dismissed Bustos's state law tort claims against the City. Under Texas common law, a municipality is immune from tort

---

[50] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). *But see Brown v. Lyford*, 243 F.3d 185, 191 n.18 (5th Cir. 2001) (explaining that a municipality may be liable if a plaintiff states a claim against an official but the official is protected by qualified immunity).

[51] *Curley v. Village of Suffern*, 268 F.3d 65, 71 (2d Cir. 2001); *see also Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 456 (7th Cir. 2009) (explaining that a municipality can be held liable when the officers are not liable "unless such a finding would create an *inconsistent* verdict").

14

No. 09-50079

liability for its acts or the acts of its agents unless the TTCA waives liability.[52] Because the TTCA does not waive liability for the claims Bustos alleges,[53] the district court did not err in dismissing the claims on immunity grounds.

## V

Bustos contends that the district court erred in dismissing his § 1983 claims against Sculley and McManus.  He alleges that Sculley and McManus had "a history of civil rights violations" and "fostered an environment" that allowed the Officers to violate his civil rights.  He further alleges that both were "derelict in the performance of [their] duties."

Supervisors cannot be held liable on a theory of vicarious liability.[54]  But they can be held liable when the "enforcement of a policy or practice results in a deprivation of federally protected rights."[55]  As noted, Bustos has failed to allege that the Officers violated his constitutional rights.  Consequently, Bustos has failed to show that any policy or practice of Sculley or McManus resulted in the violation of his rights, and the district court properly dismissed the claims against Sculley and McManus.

## VI

Lastly, Bustos contests the district court's grant of summary judgment in favor of the Martini Club and the Harpers.  He essentially argues that the district court improperly decided factual issues at the summary judgment stage and "failed to properly review" the evidence.

---

[52] *City of Amarillo v. Martin*, 971 S.W. 2d 426, 427 (Tex. 1998).

[53] *See* TEX. CIV. PRAC. & REM. CODE §§ 101.021, 101.0215, 101.055(3), 101.057, 101.065.

[54] *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978)).

[55] *Id.*

15

No. 09-50079

We review the grant of a motion for summary judgment de novo, applying the same standard as the district court.[56]  Summary judgment is appropriate when the competent summary judgment evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[57]

On summary judgment, once the moving party establishes that there are no factual issues, the burden shifts to the nonmoving party to produce evidence that a genuine issue of material fact exists for trial.[58]  The nonmoving party must then "go beyond the pleadings," and by affidavits or other competent summary judgment evidence cite "specific facts" that show there is a genuine issue for trial.[59]  But a district court may not grant a motion for summary judgment merely because it is unopposed.[60]

The defendants submitted competent summary judgment evidence showing that there were no genuine issues of fact for trial as to the foreseeability of the altercation.  They also submitted evidence that the Martini Club did not serve individuals who appeared to be intoxicated, had not violated any Texas Alcoholic Beverage Commission rules, and that the Club's premises were not unsafe.  Bustos did not respond to the motion for summary judgment in the district court and therefore failed to carry his burden of showing that material factual issues existed.  He cannot now assert that the district court's reliance on

---

[56] *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

[57] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[58] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[59] *Id.* at 324.

[60] *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

No. 09-50079

defendants' uncontested evidence was improper.  The district court did not err in granting summary judgment.

\*       \*       \*

Therefore, for the reasons discussed above, we AFFIRM the district court's judgment.