# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41344

United States Court of Appeals
Fif h Circuit

**FILED**

July 10, 2017

Lyle W. Cayce
Clerk

JOHN GERARD QUINN,

> Plaintiff - Appellant

v.

JESUS DAMIAN GUERRERO; VINCENT ROBERTS; AARON HOWELL; AARON SMITH; BARRY EAVES; DONNIE WILLIAMS; DREW CAUDELL; JASON NORTON; JESSE GARCIA; TING SUN; JOEL PURSER; CITY OF MCKINNEY, TEXAS; REX REDDEN,

> Defendants - Appellees

———————————————

Appeal from the United States District Court
for the Eastern District of Texas

———————————————

Before DAVIS, JONES, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

John Quinn originally sued individual police officers and the City of McKinney, Texas, in state court for claims arising from the execution of a search warrant on his home. The state court dismissed Quinn's claims against the officers and instructed him to replead to clarify whether he intended to assert federal claims. Quinn amended his petition to assert new claims under 42 U.S.C. §§ 1983 and 1985. The defendants removed the case to the district court, which later denied Quinn's motion to remand. The district court then dismissed Quinn's remaining claims against the officers and the City and denied his claim for punitive damages. We AFFIRM.

No. 16-41344

## FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the search of Quinn's home are disputed. According to Quinn, the City of McKinney's Special Weapons and Tactics ("SWAT") Team forcibly entered his home around 12:06 a.m. on August 4, 2006, to execute a routine search warrant. Quinn's adult son Brian, who also lived in the home, was the subject of the warrant. Quinn argues the police had multiple opportunities to detain Brian in the days prior to the search but chose instead to execute a "violent SWAT raid in the middle of the night."

Allegedly, the officers forcibly entered the home without first knocking or identifying themselves. The officers were dressed in dark, paramilitary uniforms, with no visible paraphernalia identifying themselves as police. They carried various military-grade weapons, including assault weapons and stun grenades, which are designed to temporarily blind, deafen, or otherwise incapacitate the subjects of a raid. The officers detonated at least two grenades, one of which "blew a hole in a wall and set [Quinn's] house on fire."

The home was entirely dark at the time of the search, and Quinn was in his bedroom with the doors closed and latched. After hearing the commotion, he loudly asked the officers to identify themselves but got no response. At that point, Quinn retrieved a licensed handgun from his bedside table and moved to the center of the room. "At all times," Quinn argues, the "handgun was pointed toward the floor with its safety mechanism fully engaged[.]" Officer Jesus Guerrero, on the other hand, argues that Quinn pointed the gun at him. In any event, Guerrero fired his weapon through the closed door, and one bullet struck Quinn's right hand. Quinn then fell to the floor, and Officer Rex Redden kicked in the bedroom door. At no time during this interaction did the officers ask Quinn to drop his gun or otherwise provide a warning.

2

No. 16-41344

Quinn believes the SWAT Team executed its raid in a violent manner "to exact retribution for [his] earlier filing of a civil-rights suit against the police[.]" Based on the officers' conduct, he argues "the raid and the shooting were intentional, tortious acts of terrorism conducted in bad faith, intentionally, and with malice."

On July 15, 2008, Quinn sued the officers and the City of McKinney in state court, alleging assault and battery against Guerrero; assault against the officers using the stun grenades; intentional infliction of extreme mental anguish, conspiracy, gross negligence, and negligence per se against the officers; and negligence against both the officers and the City. He also sought punitive damages and attorneys' fees. The defendants filed special exceptions to the original petition, seeking clarification as to whether Quinn was asserting any federal claims. The City also moved to dismiss the claims against the officers under Texas Civil Practice and Remedies Code § 101.106(e). The state court granted the motion to dismiss the officers. Quinn then filed a motion for rehearing or reconsideration, which the state court denied. The court also sustained the defendants' special exceptions, instructing Quinn to replead to the extent he was asserting a federal cause of action.

Quinn amended his original petition on March 23, 2009, to include causes of action under 42 U.S.C. §§ 1983 and 1985. He alleged violations of various constitutional rights, including the Fourth Amendment right to be free from unreasonable searches and seizures. Despite the state court's dismissal of the defendant officers, Quinn's amended petition also reasserted common-law claims against them.

The defendants removed the case to federal court on April 10, 2009, under 28 U.S.C. § 1441(a). Quinn moved to remand the case to state court, arguing that his original petition "sets out federal-law allegations in clear language" by repeatedly using phrases unique to federal law — like "excessive

force." He thus believes the defendants' removal after the filing of his amended complaint was untimely. The magistrate judge recommended the motion be denied because Quinn did not affirmatively allege federal claims until his petition was amended. Despite being advised to do so, Quinn did not file objections to the report and recommendation ("R&R"), which the district court adopted in full on December 22, 2009.

On February 23, 2010, the district court stayed this case pending the outcome of parallel criminal proceedings against Quinn on charges of assault against a public servant and possession of a controlled substance. The jury acquitted Quinn of the assault but found him guilty of possession of cocaine, which police found locked in a safe in Quinn's bedroom during the raid. *Quinn v. State*, No. 05-12-00049-CR, 2013 WL 2152641 (Tex. App.—Dallas May 17, 2013, pet. ref'd). The stay was lifted on April 11, 2014. After amending his complaint in 2009 and 2010, Quinn amended his complaint a third and final time on April 17, 2014. In his third amended complaint (the live complaint here), Quinn removed the names of defendant officers Vincent Roberts, Aaron Howell, Barry Eaves, Drew Caudell, Jesse Garcia, and Ting Sun.

The officers then filed motions to dismiss on various grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The City also moved to dismiss the claims against it under Rules 12(b)(1) and 12(b)(6). In August 2016, the magistrate judge recommended granting the officers' motion to dismiss based on the statute of limitations and denying their other motions as moot. Five days later, the magistrate judge recommended granting the City's motion to dismiss also. Quinn objected and moved for reconsideration of the state court's 2008 dismissal of the intentional-tort claims against the officers. The district court adopted the magistrate judge's rulings and denied Quinn's motion for reconsideration as untimely. Quinn timely appealed.

No. 16-41344

Officers Roberts, Howell, Eaves, Caudell, Garcia, and Sun have moved to be dismissed from the appeal because Quinn failed to name them in his third amended complaint. Quinn opposes the motion, arguing that he removed some names from the case caption to "streamline" the litigation but fully intended to press his intentional-tort claims against all defendants. A panel of this court ordered the motion be carried with the case.

## DISCUSSION

Quinn alleges five points of error on appeal. First, he argues the district court erred by denying the motion to remand because his original petition included factual allegations sufficient to invoke federal jurisdiction. As a result, he argues the defendants' removal several months later was untimely. Second, he argues the state court erred in dismissing his intentional-tort claims against the officers; in turn, he alleges the district court erred by not reversing that dismissal. Third, he argues the district court erred by dismissing his federal claims against the officers on limitations grounds. In support, he argues the state court's dismissal of the officers was an interlocutory decision that did not fully remove the officers from the case. Fourth, he argues the district court erred by dismissing his claims against the City, which he believes are viable under state and federal law. Finally, Quinn argues he is entitled to punitive damages. We discuss each issue in turn.

### I.     *Denial of Quinn's Motion to Remand*

Ordinarily, we review *de novo* the district court's denial of a motion to remand. *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam). Nonetheless, a party is not entitled *de novo* review after failing to file written objections to the magistrate judge's R&R within a certain period of time. *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988). To invoke the bar,

the magistrate judge "must specifically advise the parties that objections must be so filed." *Id.* at 277. If the parties then fail to file objections, we review only for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc), *superseded on other grounds by* 28 U.S.C. § 636(b)(1). Here, the magistrate judge's R&R on the remand issue contained a warning about the consequences of failing to object in writing. Despite the caution, Quinn never filed objections. We thus review the remand issue for plain error. *See Thomas v. Arn*, 474 U.S. 140, 148 (1985).

To succeed under plain-error review, Quinn must show (1) an error; (2) that is plain or obvious; (3) that affects his substantial rights. *See United States v. Escalante-Reyes*, 689 F.3d 415, 419 (5th Cir. 2012) (en banc). To establish an effect on his substantial rights, Quinn must show the outcome of the proceedings would have been different had the district court decided the issue the other way. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If the first three factors are satisfied, we have discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (alterations omitted).

Federal courts are courts of limited jurisdiction, having the power to hear only cases that present a federal question or are between citizens of different states. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Because the parties here are all Texas domiciliaries, removal jurisdiction must be based on a federal question. The plaintiff's federal question must appear on the face of his well-pleaded complaint. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). The plaintiff need not specifically cite a federal provision such as Section 1983, *Johnson v. City of Shelby*, 135 S. Ct. 346, 346–47 (2014) (per curiam), but he must allege facts sufficient to establish a colorable issue of federal law, *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 391–92 (1987). "[T]he plaintiff [is] the master of the claim," so he may confine his arguments

to those arising under state law even if federal claims are available. *Id.* at 392. If he so chooses, there is no basis for federal jurisdiction. *Id.* Further, anticipation of a federal defense is insufficient to establish federal-question jurisdiction. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008).

If an action brought in state court could have been brought in federal court originally, the defendant may remove the case to federal district court. 28 U.S.C. § 1441(a). Ordinarily, the defendant may remove within 30 days of receiving a pleading showing the case is removable. *Id.* § 1446(b). If the case is not initially removable, the defendant may remove within 30 days after receipt of a pleading that shows the case has become removable. *Id.*

In considering the motion to remand, the magistrate judge found that Quinn's original petition "does not specifically list any federal causes of action or make any claims under federal law." Despite vague references to excessive force and the United States Constitution, Quinn alleged only assault, battery, intentional infliction of extreme mental anguish, conspiracy, and negligence — all state-law claims. In fact, his only explicit reference to federal law concerned immunities the defendants may claim under the federal constitution or the Eleventh Amendment. Quinn's original complaint did not establish federal-question jurisdiction.

In response to the defendants' special exceptions, the state court ordered Quinn to replead any federal claims he may wish to allege. Quinn then amended his petition to include claims arising under federal law, including violations of Section 1983. The defendants removed the case less than 30 days later. Removal was thus proper, and the district court did not err in denying Quinn's motion to remand.

To save his remand claim, Quinn argues his pleading included facts that would support federal claims, which was allegedly sufficient to begin the 30-

day calendar for removal.  We agree with the analysis of a similar issue in an unpublished opinion of this court.  *See Cevallos v. Silva*, 541 F. App'x 390, 393 (5th Cir. 2013).  There, the plaintiff alleged a "violation of his civil and constitutional rights" and that the defendants "acted under color of law."  *Id.*  His allegations "were too ambiguous to establish federal question jurisdiction definitively."  *Id.*  Quinn's references to excessive force and the City's failure to supervise are similarly too ambiguous to allege a federal question.  Given the high bar imposed by plain-error review, the district court did not err in denying Quinn's motion to remand.

## II.   *Refusal to Reverse the State Court's Dismissal of Quinn's Intentional-Tort Claims Against the Officers*

In 2008, the state court dismissed the officers under Texas Civil Practice and Remedies Code § 101.106(e).  Immediately thereafter, Quinn filed a motion for reconsideration, which the state court denied.  Eight years later, after the case had been removed to federal court, Quinn again requested the district court reconsider the state court's earlier dismissal.  The district court denied the motion as untimely and indicated it would have denied the motion on the merits also.  According to the district court, the magistrate judge's analysis of the issue was well-reasoned and complete.

As a threshold matter, Quinn complains that his motion for reconsideration in the district court was submitted after the magistrate judge issued his R&Rs, so "there could be no analysis [the district court] could have 'adopted' on that point."  His allegations amount to an assertion that the district court failed in its constitutional obligation to conduct a *de novo* review of the magistrate judge's conclusions.  But the magistrate judge did discuss the dismissal of the officers in his earlier R&R.  The report focused on the statute of limitations, but the magistrate judge stated that "even if the amended

pleading were filed within the statute of limitations, application of the Texas statute would require that [the officers] be dismissed here, and again, they would be dismissed with prejudice." His analysis is supported by numerous citations to cases and applicable statutes. Contrary to Quinn's assertion, then, there was analysis for the district court to adopt.

The district court's refusal to reconsider the state court's decision is subject to review for an abuse of discretion. *Fletcher v. Apfel*, 210 F.3d 510, 512 (5th Cir. 2000). The focus of such review is whether the district court acted reasonably. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). On the other hand, the state court's order dismissing the defendants amounts to a dismissal for lack of subject-matter jurisdiction. We thus afford *de novo* review to the merits of the state court's dismissal. *See Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570 (5th Cir. 2001). For clarity, we analyze each decision.

We discuss the district court's procedural denial first. In federal court, any "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e). Such motions serve "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet*, 367 F.3d at 479 (alterations omitted). These motions should not be used to raise arguments that were presented or could have been presented in the past. *Id.* An untimely motion under Rule 59(e) is a nullity; the district court may refuse to consider it entirely. *Washington v. Patlis*, 868 F.2d 172, 174 (5th Cir. 1989); 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 2817 (3d ed. 2017).

Here, Quinn engages in an elaborate calculation to demonstrate that his motion before the district court was timely. By subtracting the amount of time the case was stayed and the days the court spent considering other motions, he contends that he had only 49 possible days in which to make his Rule 59(e)

motion and that his motion was made on day 44 of 49. Despite the appeal to equity, Quinn's claims were brought far too late to warrant reconsideration. Quinn missed the 28-day deadline by several years, rendering his motion a nullity. Further, Quinn failed to raise new arguments, instead attempting to rehash the same argument presented to and rejected by the state court in 2008. The district court did not commit an abuse of discretion by denying Quinn's motion for reconsideration. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).[1]

We now turn to the merits of the state court's dismissal order. Under the Texas Tort Claims Act ("TTCA"):

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter.
> . . .
> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

TEX. CIV. PRAC. & REM. CODE § 101.106. The City moved to dismiss the officers under Subsection (e), and the state court granted its motion. Quinn now argues that the court erred because Section 101.106, properly applied, does not bar intentional-tort claims against the officers. In his complaint, Quinn alleged intentional-tort and negligence claims against the officers but only negligence claims against the city — presumably recognizing that governmental immunity applies "to claims arising out of intentional torts."

---

[1] Even if the district court construed Quinn's motion as Rule 60(b) motion for relief from judgment, his eight-year delay in filing was not "within a reasonable time." *See* FED. R. CIV. P. 60(c). We have previously stated that a delay exceeding one year "cannot be countenanced." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1411 (5th Cir. 1994). An eight-year delay is at least equally indefensible.

No. 16-41344

*Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999, no pet.). Thus, he argues, his intentional-tort claims could only be brought against the officers.[2] He argues that the state court's dismissal order effectively strips him of the opportunity to recover on his intentional-tort claims, thereby violating his constitutional right to open courts.

The Texas Supreme Court addressed this issue in a suit in which former employees sued a school district and its superintendent for wrongful discharge and various common-law torts.[3] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 654–55 (Tex. 2008). Although the court focused on Section 101.106(b), it discussed Subsection (e) also. *Id.* at 658–59. It held that the superintendent would be entitled to dismissal of the intentional-tort claims against him upon the district's filing of a motion to that effect. *Id.* The court recognized the election-of-remedies provision requires litigants to make a difficult choice, but it concluded that the legislature intended to reduce the costs associated with defending duplicative lawsuits. *Id.* at 657.

We later applied *Garcia* to decide a similar case. *Bustos v. Martini Club Inc.*, 599 F.3d 458, 462–63 (5th Cir. 2010). There, the plaintiff sued the City of San Antonio, several police officers, the city manager, and the chief of police for injuries he sustained during a bar fight with the officers. *Id.* at 461. The

---

[2] It is unclear whether Quinn sued the officers in their individual or official capacities. When a petition does not specify the capacity in which a defendant was sued, Texas courts look past the form of the pleadings "to ascertain the true nature of [the] claims." *Pickell v. Brooks*, 846 S.W.2d 421, 424 n.5 (Tex. App.—Austin 1992, writ denied). Quinn's petition does not call the defendants "officers" or otherwise designate them as government employees. Regardless, his claims arise from conduct occurring during the course of their official responsibilities, so we assume these officers were sued in their official capacities. *See Zellers v. Cortez*, No. 13-09-00596-CV, 2010 WL 1839280, at *3 (Tex. App.—Corpus Christi 2010, no pet.) (unpublished); *Nueces Cnty. v. Ferguson*, 97 S.W.3d 205, 216 (Tex. App.—Corpus Christi 2002, no pet.).

[3] Quinn suggests that, if uncertainty remains about the state of the law, we should certify the question to the Texas Supreme Court. As discussed above, the Texas Supreme Court has already announced and reaffirmed its position on the issue, so no certification is necessary.

district court dismissed the intentional-tort claims against the officers upon the City's motion. *Id.* at 462. This court analyzed *Garcia* and concluded that "if a plaintiff brings virtually any state common law tort claim against both a governmental unit and its employees, § 101.106(e) will allow the employee defendants to be dismissed if the governmental unit so moves." *Id.* at 463.

*Garcia* and *Bustos* control here. As was the case in *Bustos*, Quinn asserted state-law claims against the City and the officers. "[A] suit asserting common law claims against a Texas governmental unit . . . is considered to be under the TTCA." *Bustos*, 599 F.3d at 462. Consequently, Section 101.106(e) applies, and the officers were entitled to dismissal upon the City's motion. That motion was filed. The state court did not err in dismissing the common-law claims against the officers.

### III.    *Dismissal of Quinn's Federal Claims Against the Officers*

We review "*de novo* a district court's order on a 12(b)(6) motion to dismiss for failure to state a claim." *Hunter v. Berkshire Hathaway, Inc.*, 829 F.3d 357, 361 (5th Cir. 2016). Quinn argues the district court erred in dismissing his federal claims against the officers as time-barred. He first argues that the officers remained parties to the case because the state court's dismissal under Section 101.106(e) was improper. He then argues that, even if dismissal was proper, the officers "were still in the case" because the state court's order was interlocutory. Finally, he argues the doctrines of relation back and identity of interest save his federal claims.

We have already determined that the state court's dismissal of the officers under Section 101.106(e) was proper because of the election-of-remedies rule. The court ordered the officers be "dismissed with prejudice," so the officers were no longer parties. Under Texas Civil Practice and Remedies Code § 51.014(a)(8), a party may appeal an interlocutory order that "grants or

No. 16-41344

denies a plea to the jurisdiction by a governmental unit[.]" Substantive claims of immunity constitute pleas to the jurisdiction. *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 666 (Tex. 2012). Quinn thus had the right to appeal the state court's dismissal of the officers under Section 101.106(e). *See Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex. 2011).

Beyond the question of Quinn's right to appeal the dismissal, a different rule of law applies to bar Quinn's Section 1983 claims. "Texas courts have held that as a general rule, where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Jackson v. Jackson*, 950 F.2d 263, 265 (5th Cir. 1992). For example, the statute of limitations on a prisoner's Section 1983 claims may be tolled if he is first required to exhaust state remedies. *Id.* at 265–66. It follows, then, that the statute of limitations is not tolled during the pendency of one suit if that suit does not hinder the claimant's ability to bring another. *See id.*

Another panel of this court previously addressed a situation like this in an unpublished decision, whose reasoning we conclude is sound. *Gant v. Garofano*, 119 F. App'x 602, 602 (5th Cir. 2004). The district court dismissed prisoner Gant's Section 1983 claims as time-barred. *Id.* He had previously filed unsuccessful lawsuits in state and federal court; he argued that the statute of limitations was tolled by the pendency of his prior lawsuits. *Id.* We disagreed, relying on Texas equitable-tolling principles. *Id.* at 603. Nothing about the prisoner's prior lawsuits forced him to delay filing his Section 1983 claims; he simply waited too long to do so. *Id.* Thus, even while his state lawsuit was proceeding, Quinn could have asserted Section 1983 claims in a new suit. The statute of limitations thus continued to run in this case, expiring well before Quinn alleged a violation of federal law.

To save his federal claims against the officers, Quinn asks us to apply the relation-back doctrine.  The technical pleading errors Quinn asks us to forgive are not the type of errors that relation back is designed to fix, such as misnomer and misidentification. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010); *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey*, 332 S.W.3d 395, 400–01 (Tex. 2011).  Quinn correctly identified the defendants he wished to sue.  The pleading error was failing to allege a federal cause of action until it was too late.  In other words, relation back is designed to ameliorate certain kinds of mistakes, but Quinn made a tactical choice to omit his federal claims until March 2009.  As a result, the relation-back doctrine does not apply.

Finally, Quinn argues the concept of identity of interest saves his federal claims.  Quinn adequately describes what it means for parties to share an identity of interest using this court's decision in *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998):  An identity of interest exists when "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other."  The defendant officers here certainly share an identity of interest with the City. *See id.*  Quinn's problem, though, is not that he failed to name the proper defendant and now must rely on the officers' kinship to the City to salvage his claims.  His problem is that he sued the correct defendants on the wrong claim and failed to correct his error until the limitations period had expired.  The shared identity of interest between the officers and the City is of no consequence.  The district court properly dismissed Quinn's federal claims against the individual defendants.

.

## IV.    *Dismissal of Quinn's Claims Against the City*

We review *de novo* the district court's grant of the City's motion to dismiss under Rules 12(b)(1) and 12(b)(6). *See Ramming v. United States*, 281

F.3d 158, 161 (5th Cir. 2001). We analyze this issue in two parts. First we discuss Quinn's state-law claims, and then we turn to a review of his federal claims.

The magistrate judge recommended dismissing Quinn's state-law claims against the City because the officers acted intentionally, exonerating the City from vicarious liability under the TTCA. TEX. CIV. PRAC. & REM. CODE § 101.057. Quinn argues dismissal was improper because his complaint alleges both intentional and negligent conduct.

"[T]he TTCA does not apply to claims arising out of an intentional tort." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009). If plaintiffs classify intentional-tort claims as negligence claims, governmental immunity still applies. *Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001). Quinn argues that his complaint raises a fact issue as to whether the officers acted intentionally or negligently during the search of his home. That does not matter, as "a negligence claim under the TTCA cannot arise out of the intentional acts . . . of a law enforcement officer against a person[.]" *City of Waco v. Williams*, 209 S.W.3d 216, 221–22 (Tex. App.—Waco 2006, pet. denied) (collecting cases). "Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not." *City of Watauga v. Gordon*, 434 S.W.3d 586, 593 (Tex. 2014).

We dealt with the same issues in a case in which police brought a man to a hospital for treatment after he began behaving erratically in public. *Saenz v. City of El Paso*, 637 F. App'x 828, 829 (5th Cir. 2016). We agree with that panel's analysis. While in custody, the man was shot and killed by an El Paso police officer. *Id.* The victim's mother sued the City for negligence under the TTCA, among other things. *Id.* at 829–30. We examined whether the plaintiff's claims arose from intentional conduct. *Id.* at 830. The gravamen of the claim was excessive force in the shooting, which "sounds in intentional

tort." *Id.* The plaintiff could not avoid dismissal of her claims by arguing negligence. *Id.* at 831. The determinative question is whether the negligence claim arises from the same facts that form the basis of the intentional-tort claim. *Id.*; *see also Goodman*, 571 F.3d at 394. If so, governmental immunity is not waived. *Saenz*, 637 F. App'x at 831.

The magistrate judge recognized "that the alleged facts supporting [Quinn's] negligence claims in this case are intentional torts[.]" Quinn described the incident in terms of intentional conduct, characterizing the search as an "*intentional*, tortious act[] of terrorism conducted in bad faith, *intentionally*, and with malice." He now asserts that it is unclear whether Guerrero acted intentionally or negligently to cause his injuries. Either way, it is clear that Quinn failed to allege conduct that would suggest negligence. Instead, he attempted to plead negligence alternatively, which is not proper. *See Saenz*, 637 F. App'x at 831. His negligence claims arise from the same conduct as his intentional-tort claims, so governmental immunity applies and the state-law claims were properly dismissed. *See Petta*, 44 S.W.3d at 580.

As for Quinn's federal claims, the magistrate judge reviewed Quinn's allegations and determined that Quinn failed to state a claim against the City under Section 1983. Quinn now argues that his complaint alleges a Section 1983 violation by asserting that the officers performed a no-knock entry without a no-knock warrant.[4] He further argues the district court should have permitted a period of discovery before granting the City's Rule 12 dismissal.

Municipal liability under Section 1983 requires evidence of some policy or custom that causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*,

---

[4] The failure to knock and announce before executing a search warrant is not a constitutional violation per se; instead, observation of the knock-and-announce requirement is a factor to consider when determining the reasonableness of a search under the Fourth Amendment. *Richards v. Wisconsin*, 520 U.S. 385, 394–95 (1997).

436 U.S. 658, 690–91 (1978). Specifically, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010). A policy may be identified "through evidence of an actual policy, regulation, or decision," *id.* at 542, or through an informal custom that represents municipal policy, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). A policy may also be shown through a single incident but only if the person making the decision had final policy-making power. *Valle*, 613 F.3d at 542.

To establish the City's failure to train, Quinn must show "(1) inadequate training procedures; (2) that inadequate training caused the task force officers to [use excessive force]; and (3) the deliberate indifference of municipal policymakers." *See Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002). "The inadequacy of [the] training must be closely related to the injury." *Id.* Defects in a particular training program must be specifically alleged. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

Quinn never alleges either an official policy or a widespread custom that caused a violation of his constitutional rights. In fact, Quinn admitted before the district court that the City's official policies were "just fine." His allegations thus amount to assertions that the officers violated the City's proper procedures on the execution of search warrants, the use of force, and the use of the tactical team. Mere assertions are insufficient, though; Quinn did not identify specific deficiencies in the City's training procedures. *See id.* He suggests the search of his home could have been intended to exact retribution for his earlier filing of a lawsuit against the police department. If true, that does not show a custom by the City of constitutional abuse.

17

Quinn argues the police engage in a code of silence, under which officers are tacitly encouraged to use excessive force by the department's failure to discipline its members for incidents like these.  In support, he argues the officers involved in the search of his home have yet to be disciplined for their alleged misconduct.  A theory of ratification is limited to "extreme factual situations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009). "[I]t is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case." *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001).  Here, Quinn failed to allege a "pattern of complaints by other citizens." *See id.*  The City's failure to discipline the officers does not establish an unconstitutional policy or custom.

Quinn further argues that City officials know of a privately hosted website that glorifies the SWAT Team with "an obscene ballad with lyrics about murder and drugs."  As the district court noted, though, Quinn failed to show that any City officials had either actual or constructive knowledge of the website or its host.  Finally, Quinn takes issue with the City's use of a "threat matrix" to determine when SWAT personnel should be employed in a given situation.  He argues the City should be liable if the officers failed to implement the matrix correctly.  Regardless, Quinn wholly failed to link the City's use of the matrix to the alleged constitutional violation.  His allegations are thus insufficient to establish *Monell* liability, and the district court correctly dismissed his federal claims against the City.

Quinn requests a period of discovery, after which he intends to replead to cure any defects in his complaint.  Discovery would be futile, though, because Quinn has amended his initial petition four times and has yet to state a claim. In any event, discovery is not permitted if the live complaint fails to allege facts sufficient to suggest that discovery would reveal evidence in support of a viable

claim.  *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009).
Here, Quinn failed to allege negligent conduct or that the City has adopted a
policy fostering unconstitutional behavior.  His requested period of discovery
is impermissible.

## V.    *Denial of Quinn's Claim for Punitive Damages*

We affirm the district court's decision dismissing all claims against the
individual officers and the City.  Thus, we have no reason to discuss the issue
of punitive damages.

## VI.    *Motion Carried with the Case*

Finally, Defendants Roberts, Howell, Eaves, Caudell, Garcia, and Sun
moved to dismiss the appeal against them because Quinn's live complaint
failed to name them as defendants.  Because we affirm the decision to dismiss
the individual defendants, this motion is DENIED AS MOOT.

AFFIRMED.